<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSELITO RODRIGUEZ,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 2:16-cv-02807-SDW<br><br>**OPINION**<br><br>March 9, 2017 |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Joselito Rodriguez's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Dennis O'Leary's ("ALJ O'Leary") denial of Plaintiff's claim for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ O'Leary's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision must be **AFFIRMED**.

1

I.     **PROCEDURAL AND FACTUAL HISTORY**

    A.  **Procedural History**

Plaintiff applied for SSI on September 18, 2012. (Tr. 63.) His SSI application, which was denied both initially and upon reconsideration, claimed he suffered from "diabetes, cholesterol, back problems, [and] depression," with an onset date of December 15, 2011. (Tr. 63, 93, 97–98). Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ") and a hearing was held before ALJ O'Leary on April 30, 2014. (Tr. 33–62.) Plaintiff, as well as a vocational expert, appeared and testified at the hearing. (*Id.*) ALJ O'Leary then issued a decision finding Plaintiff not disabled and denying Plaintiff's application for disability benefits on September 11, 2014. (Tr. 11–28.) On March 18, 2016, the Appeals Council denied Plaintiff's request for review of ALJ O'Leary's decision, making it the Commissioner's final decision. (Tr. 1–7.) Plaintiff now requests that this Court reverse the Commissioner's decision and remand this matter for an award of benefits or, in the alternative, for further administrative proceedings. (Pl. Br. at 25.)

    B.  **Factual History**

        *i.   Personal and Medical History*

Plaintiff was 44 years old when he filed his claim for disability benefits on September 18, 2012. (Tr. 63.) He completed tenth grade and was previously employed as a hand packager/factory worker. (Tr. 55, 201.) The record reflects that numerous medical doctors and healthcare practitioners examined Plaintiff in relation to his disability claim. (*See* 282–418.) In addition, Plaintiff testified about his health during a hearing before ALJ O'Leary. (*See* Tr. 33–54.) The following is a summary of the medical evidence.

2

Plaintiff alleges that he has been unable to work due to his ailments as of December 15, 2011. (Tr. 63.) Specifically, Plaintiff asserts that he has numbness in his fingertips, back pain, diabetes, asthma, and suffers from depression, schizophrenia, and bipolar disorder. (Tr. 39.)

### a. Physical Symptoms

On June 30, 2011, Plaintiff was admitted to CURA, Inc., to be treated for alcohol, cocaine, and heroin abuse. (Tr. 431.) Yolanda I. Dagnino, M.D. ("Dr. Dagnino"), a doctor at Plaintiff's residential drug and alcohol treatment facility, noted that Plaintiff had lower back pain. (Tr. 430–31.) On February 10, 2012, Ashraf Mansour, M.D. ("Dr. Mansour"), reported that Plaintiff had no muscle pain or swelling, no obvious muscle wasting, and no edema. (Tr. 380.) Dr. Mansour also determined that Plaintiff had no focal deficits and had a grossly intact neurological exam. (Tr. 381.) Dr. Mansour reported that the doctor's office would "fill papers for [Plaintiff's] disability," but only for one month. (Tr. 375.) Plaintiff then went to Rajaram Kandasamy, M.D. ("Dr. Kandasamy"), on March 17, 2012, where Plaintiff reported that he had "on and off" back and leg pain. (Tr. 376.) Dr. Kandasamy, however, reported that Plaintiff had no motor or sensory deficits and no edema. (Tr. 377–78.)

Plaintiff saw Lucyamma Thalody, M.D. ("Dr. Thalody"), on June 27, 2012, and informed her that he had back pain. (Tr. 371.) However, Plaintiff admitted that he had not taken any medications in the past two months and Dr. Thalody noted no abnormal musculoskeletal or neurological deficits. (*Id.*) In addition, in September 2012, Dr. Thalody told Plaintiff to stop returning to the practice for additional pain medication. (Tr. 358.)

On September 6, 2012, Rajeswari Pingle, M.D. ("Dr. Pingle"), reported that Plaintiff had a normal gait, normal neurological exam, normal range of motion in his lower extremities, intact sensation, and normal muscle strength. (Tr. 288, 294–95.) Dr. Dagnino, on October 22, 2012,

3

wrote a prescription for a wooden cane. (Tr. 314.) During a consultative exam on November 13, 2012, Rambhai Patel, M.D. ("Dr. Patel"), indicated that Plaintiff was walking with a cane, but noted that he had normal reflexes and sensation, had no gross neurological deficits, and had no localized tenderness or edema. (Tr. 387.) Dr. Patel also noted that Plaintiff had no vascular or neurological involvement from his diabetes and that he had no asthma. (*Id.*) An x-ray showed that Plaintiff's lumbar spine had no fractures or dislocations and no spondylosis or spondylolisthesis. (*Id.*) Plaintiff also indicated to Dr. Patel that he could lift 20 to 25 pounds. (Tr. 386.)

On December 3, 2012, Mary Ann Nicastro, M.D. ("Dr. Nicastro"), a state agency medical consultant, opined that Plaintiff could complete the following: occasionally lift and/or carry ten pounds, frequently lift and/or carry ten pounds, stand, walk, and sit for about six hours in an eight-hour workday and push and/or pull without any limitation. (Tr. 69.) Nikolaos Galakos, M.D. ("Dr. Galakos"), affirmed Dr. Nicastro's December 3 opinion on February, 29, 2013. (*See* Tr. 82–83.) In addition, on December 10, 2012, Sunita Sood, M.D. ("Dr. Sood"), documented that Plaintiff had a normal range of motion. (Tr. 396–97.)

### b. Mental Symptoms

During Plaintiff's visit on March 17, 2012, Dr. Kandasamy indicated that Plaintiff's mood and mentation were normal. (Tr. 377.) During his visit with Dr. Rajeswari Pingle on September 6, 2012, Plaintiff had a normal psychiatric exam, and Dr. Pingle noted that Plaintiff was oriented to person, place, and time and had a normal affect and memory. (Tr. 288.) Plaintiff also denied suicidal ideation. (Tr. 286–88.) A nurse from CURA, Inc., also indicated that in October 2012, Plaintiff stated that he was sleeping well and denied suicidal ideation. (Tr. 310.) On November 13, 2012, Plaintiff underwent a psychological examination with Paul Fulford, Ph.D. ("Dr.

4

Fulford"). (*See* Tr. 382.) Plaintiff stated that he had auditory hallucinations and felt like others were watching him. (Tr. 384.) Plaintiff also stated that "[he tries] not to socialize too much," but that having a girlfriend in his life was "nice." (*Id.*) Dr. Fulford found that Plaintiff had clear and goal-directed speech, and "[n]o looseness of association, circumstantial or tangential thinking was noted." (Tr. 383.) Dr. Fulford assigned a Global Assessment of Functioning (GAF) score of 60, indicating mild to moderate symptomology.[1]

On November 26, 2012, Seymour Bortner, M.D. ("Dr. Bortner"), a state agency medical consultant, determined that Plaintiff's limitations in activities of daily living and social functioning were mild and that his limitations in maintaining concentration, persistence, or pace were moderate. (Tr. 67.) In addition, Dr. Bortner indicated that Plaintiff had one or two episodes of decompensation. (*Id.*) Dr. Bortner also opined that Plaintiff would have difficulty dealing with difficult instructions, however, Plaintiff could understand and execute simple instructions as well as "make work related decisions, interact with others and adapt to workplace change." (Tr. 71.)

On March 10, 2013, Thomas Yared, M.D. ("Dr. Yared"), affirmed Dr. Bortner's November 26 opinion. (*See* Tr. 81.) Dr. Yared determined that Plaintiff is not significantly limited in his ability to carry out simple instructions, to work in coordination with or in proximity to others without being distracted by them, and to make simple work-related decisions. (Tr. 84–85.) Dr. Yared also determined that Plaintiff was moderately limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to sustain an ordinary routine without special supervision. (*Id.*)

---

[1] DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 1994).

5

### ii. *Function Report*

Plaintiff submitted a function report in support of his application for SSI. (Tr. 208–15.) Plaintiff stated that his daily activities consist of taking a shower, getting dressed, going to counseling, reading, and watching television. (Tr. 208.) Plaintiff also stated that he is in pain when dressing himself, bathing, shaving, and using the toilet, but is able to care for his hair and feed himself without being in pain. (Tr. 209.) Furthermore, Plaintiff reported that he is not able to prepare his own meals and perform household chores. (Tr. 210.) Plaintiff stated that he goes shopping for food and clothing twice every month. (*Id.*) Plaintiff also reported that he has difficulty walking, sitting, and using his hands, but is able to lift light objects. (Tr. 212–13.) In addition, Plaintiff noted that he does not handle stress and changes in routine well and that he is afraid to go out alone. (Tr. 214.)

### iii. *Hearing Testimony*

At the hearing before ALJ O'Leary on April 30, 2014, Plaintiff testified about his debilitating conditions, daily activities at home, previous employment, and medication/treatment. (*See* Tr. 32–49.) Plaintiff referenced multiple physical and psychiatric ailments that contributed to his request for SSI, including a stab wound in his back from 2010, diabetes, asthma, depression, schizophrenia, and bipolar disorder. (Tr. 38–54.)

Vocational expert Pat Greene ("Greene") testified at the hearing by telephone and stated that someone with Plaintiff's limitations would be unable to perform his past work as a hand packager. (Tr. 55–56.) Greene, however, also testified that there existed representative jobs in the national economy that an individual with Plaintiff's conditions could perform, such as a shoe packer, a garment sorter, a final assembler, an order clerk, a stuffer, and a telephone quotation clerk. (Tr. 56–59.)

6

## II.     LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which

7

evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

8

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination

of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy

that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

ALJ O'Leary applied the Five-Step Disability Test to the facts comprising Plaintiff's application for SSI and determined that Plaintiff was not disabled under the relevant portions of the Act. (*See* Tr. 17–28.) Specifically, ALJ O'Leary determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" and that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 19, 27.) These factual findings are supported by substantial credible evidence in the record. Therefore, this Court affirms ALJ O'Leary's denial of SSI. The following is an outline of ALJ O'Leary's five-step analysis:

At step one of the disability analysis, ALJ O'Leary properly found that Plaintiff had not engaged in SGA since September 18, 2012, the application date. (Tr. 19); *see* 20 C.F.R. § 416.971 *et seq*. ALJ O'Leary accordingly proceeded to step two to determine what, if any, severe impairments Plaintiff suffered. *See* 20 C.F.R. § 416.920(a)(4)(ii).

At step two, ALJ O'Leary properly considered the entire medical record in finding that Plaintiff suffered from the following severe impairments: "lumbar degenerative disc disease, asthma, diabetes mellitus, depression." (Tr. 19); *see* 20 C.F.R. § 416.920(c). ALJ O'Leary found that these severe impairments "cause significant limitation on [Plaintiff's] ability to perform work activities during the period being adjudicated." (Tr. 19.) ALJ O'Leary's findings of severe impairments are supported by substantial evidence in the record. Once ALJ O'Leary determined

11

which of Plaintiff's impairments qualified as "severe," ALJ O'Leary considered, under step three, whether Plaintiff's severe impairments equal or exceed those in the Listing of Impairments in the Act. *See* C.F.R. § 416.920(a)(4)(iii).

At step three, ALJ O'Leary properly determined that Plaintiff's impairments did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). Specifically, ALJ O'Leary found that the requirements of listing 1.04A, disorders of the back, were not met because there was no evidence of sensory or reflex loss, or positive straight leg raising. (Tr. 19–20.) ALJ O'Leary also determined that the elements of listing 1.04B were not met because an operative report or pathology report of spinal arachnoiditis was absent from the medical record. (Tr. 20.) In addition, ALJ O'Leary properly determined that the elements of listing 1.04C were not met because the record did not show that Plaintiff required two crutches or a walker to ambulate. (*Id.*) Next, ALJ O'Leary adequately considered listing 3.03, asthma, and found "that the precise criteria [was] not met, as there [were] no pulmonary function tests in the record." (*Id.*) ALJ O'Leary's determination that listing 3.03B was not met was also correct because "the evidence fail[ed] to establish the number of attacks in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year[.]" (*Id.*) Moreover, ALJ O'Leary determined Plaintiff's mental impairments did not meet or exceed the severity requirements set forth in listing 12.04. ALJ O'Leary then held that the Paragraph B requirements were not satisfied because Plaintiff's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration. (*Id.*); *see* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. In reaching this conclusion, ALJ O'Leary properly found that Plaintiff only has mild restriction in his activities of daily living. (Tr. 19.) In addition, ALJ

12

O'Leary cited to evidence and stated that Plaintiff "was able to do chores within his residential community [as well as] shower, use public transportation, and shop in stores for food and clothing." (Tr. 20.) ALJ O'Leary also found that Plaintiff has moderate difficulties in social functioning, and cited to Plaintiff's testimony and the record that Plaintiff "does not like to socialize with others," but that he "has no problems getting along with family, friends, or authority figures." (Tr. 21.) Next, ALJ O'Leary found that Plaintiff only has mild difficulties with regard to concentration, persistence or pace, citing to the record that the Plaintiff can pay bills and enjoys reading and doing puzzles. (*Id.*) Lastly, ALJ O'Leary properly found that the record evidence reflects that Plaintiff has not experienced any episodes of decompensation lasting for an extended duration. (*Id.*) ALJ O'Leary also found that the evidence failed to establish the presence of the Paragraph C criteria. (*Id.*) Therefore, ALJ O'Leary properly found that Plaintiff's impairments did not equal or exceed the impairments in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Accordingly, Plaintiff was not disabled under step three analysis, leading ALJ O'Leary to step four to determine whether Plaintiff can perform any of his past relevant work. *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(e).

Before undergoing the analysis in step four, ALJ O'Leary determined Plaintiff's RFC. (Tr. 21–27); *see* 20 C.F.R. §§ 416.920(e), 416.945. ALJ O'Leary properly concluded that Plaintiff has the RFC "to perform light work as defined in 20 CFR 416.967(b) except that [Plaintiff] can frequently perform fine fingering manipulation, but cannot be exposed to undue concentration of dust, smoke, fumes, or other pulmonary irritants or extremes of temperature, and would be precluded from jobs with direct contact with the public and can have only minimal contact with supervisors and coworkers." (Tr. 21–22.) In making this determination, ALJ O'Leary considered both objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §

13

416.929 and SSRs 96-4p and 96-7p. (Tr. 22.) He also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*) In support of his finding, ALJ O'Leary cited extensively to Plaintiff's testimony, the treatment and evaluative records of Dr. Mansour, Dr. Kandasamy, Dr. Thalody, Dr. Pingle, Dr. Patel, Dr. Sood, Dr. Dagnino, Dr. Fulford, and the state agency medical consultants. (*See* Tr. 21–27.)

After determining Plaintiff's RFC, at step four ALJ O'Leary properly found that Plaintiff has no past relevant work under 20 C.F.R. § 416.965. (Tr. 27.) Because ALJ O'Leary determined that Plaintiff had no past relevant work, ALJ O'Leary continued to step five to determine whether there exists work in the national economy Plaintiff could perform. *See* C.F.R. §§ 416.920(a)(4)(v), 416.920(f), 416.920(g)(1).

At step five, ALJ O'Leary properly found that Plaintiff can perform work that exists in significant numbers in the national economy. (Tr. 27); *see* 20 C.F.R. §§ 416.969, 416.969a. ALJ O'Leary considered Plaintiff's age, education, work experience and RFC, as well as the vocational expert's testimony. (Tr. 27–28.) The vocational expert determined that Plaintiff was capable of satisfying the requirements of the representative occupations of a shoe packer, garment sorter, final assembler, order clerk, stuffer, and telephone solicitation clerk, which exist in the aggregate of thousands of jobs nationally. (Tr. 27.) Thus, ALJ O'Leary's factual findings that Plaintiff is capable of performing work that exists in significant numbers in the national economy are supported by substantial credible evidence. Accordingly, ALJ O'Leary was correct in determining that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. (Tr. 28); *see* 20 C.F.R. §§ 416. 920(a)(4)(v), 416.920(g).

On appeal, Plaintiff now challenges ALJ O'Leary's RFC determination on two grounds. (*See* Pl.'s Br. at 19, 21.) First, Plaintiff argues that ALJ O'Leary's RFC determination "does not

14

encompass all of the limitations that the ALJ found." (*See* Pl.'s Br. at 19.) Aside from Plaintiff's argument that ALJ O'Leary did not consider Plaintiff's use of a cane, Plaintiff fails to sufficiently outline what ALJ O'Leary overlooked. Plaintiff briefly argues that ALJ O'Leary "should have included limitations regarding his findings to deficits in activities of daily living and concentration, persistence or pace [,]" but fails to specifically mention which limitations were not considered. (*See* Pl.'s Br. at 20.)

Second, Plaintiff argues that ALJ O'Leary "should not have found [Plaintiff] capable of a narrow range of light work[,]" and bases this assertion on ALJ O'Leary's decision to not address Plaintiff's use of a cane in determining his RFC. (*See* Pl.'s Br. at 21–24.) However, in addressing a claimant's RFC, the ALJ need only consider "medically required" devices. SSR 96-9p, 1996 WL 374185, at *7 (S.S.A.). Moreover:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.

*Id.* In addition, a prescription for a cane is not enough to demonstrate that the cane is medically necessary. *See Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (demonstrating that the mention of Plaintiff's use of a cane throughout the record and a physician's "script" for a cane is "insufficient to support a finding that the [Plaintiff's] cane was medically necessary.")

Here, Dr. Dagnino, Plaintiff's doctor at CURA, Inc., prescribed a wooden cane. (*See* Tr. 314). However, the treatment record does not indicate that the cane is in fact medically necessary. (*See* Tr. 306–11, 316–18, 331, 424, 430–32). In addition, various other medical reports indicated that Plaintiff's gait was normal. (*See* Tr. 288, 294–95, 383, 387.) Plaintiff also admitted that he is able to walk two to three blocks without the cane. (*See* Tr. 386.) This evidence counters Plaintiff's claim that the cane was medically necessary. *See Dyler v. Colvin*, No 3:14-CV-1962,

2015 WL 3953135, at *18 (M.D. Pa June 29, 2015) (suggesting that contradictory evidence such as steady gait findings may suggest that the cane is not medically necessary). ALJ O'Leary was, therefore, not required to include the use of a cane in Plaintiff's RFC. Thus, in light of the substantial evidence supporting ALJ O'Leary's RFC holding, this Court finds that ALJ O'Leary properly determined Plaintiff's RFC.

## IV. CONCLUSION

Because this Court finds that ALJ O'Leary's factual findings were supported by substantial credible evidence in the record and that ALJ O'Leary's legal conclusions were correct, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties